LOLLEY, J.
| Daniel Lee Gibbs seeks review of the judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein the trial court convicted him of one count of commercial littering pursuant to La. R.S. 30:2531.3 and assessed a fine of $3,000.00. For the following reasons, we *395 affirm the trial court’s conviction and sentence.
FACTS
On June 30, 2009, Terry Harris (“Harris”) paid Daniel Lee Gibbs (“Gibbs”) $900 to move Harris’s older model mobile home from Bossier Parish to Caddo Parish, Louisiana. Gibbs received $400 upon hitching the mobile home to his truck and another $500 before he began towing the mobile home down Highway 1 toward Caddo Parish. However, Gibbs failed to inspect the mobile home or to inquire whether it was in roadworthy condition before taking it onto the road.
As Gibbs pulled the mobile home down Highway 1, the mobile home’s hind quarters gave out and began dragging along the highway, sending debris and hot pieces of metal in every direction, and setting two fires along the roadside. Gibbs stopped his truck long enough to put out the two fires before hopping back in to pull the mobile home further down the highway to a place wide enough to safely pull off the road. While this took place, Gibbs called Harris and informed him of the fate of his mobile home. The Harris family, awaiting the arrival of their mobile home at their new neighborhood, drove out to meet Gibbs on Highway 1. While Gibbs hauled the broken mobile home an additional mile, smoke spewed from the 12damaged hulk as the rear tires rubbed against the broken axle threatening to immolate the crippled mobile home before reaching its final resting place.
Once Gibbs reached a place wide enough to deposit the mobile home, he told Harris to have it repaired before he would move it the rest of the way to Caddo Parish. In light of the circumstances Harris said, “Okay”; however, at trial, Gibbs admitted that he believed the mobile home was beyond repair. Gibbs returned the $500 towing payment to Harris, unhitched the remnants of the mobile home, and left the remains alongside Highway 1. The same day, after both parties had left but before the aforementioned repairs had commenced, a Caddo Parish Sheriffs deputy arrived on the scene in response to a complaint about the mobile home. The caller stated that the mobile home blocked her view when entering the highway from her driveway.
An investigation quickly determined that the mobile home belonged to Harris. The Sheriffs deputy contacted Harris, and Harris informed the deputy of what had occurred. The Sheriffs deputy then contacted Gibbs who refused to move the mobile home any further or work with Harris to affect its removal. Ultimately, a towing company had to cut the mobile home into quarters before hauling it away. Gibbs was subsequently cited with commercial littering and after a trial on the matter, was convicted and ordered to' pay for the cost of removing the mobile home. Gibbs filed a motion for a new trial which the trial court denied. This supervisory writ followed.
|,DISCUSSION

Sufficiency of the Evidence

As his sole assignment of error, Gibbs argues that the State failed to provide sufficient evidence to prove, beyond a reasonable doubt, all the elements of La. R.S. 30:2531.3. Specifically, Gibbs argues that at the time the mobile home was abandoned, possession of the mobile home had already passed to the owner in light of the fact that Harris agreed to have the trailer fixed before attempting to move it again. Thus, the State failed to overcome the presumption under La. R.S. 30:2531.3(C)(1) that Harris committed the act of disposing. Gibbs argues alternative *396 ly that the employer/employee relationship should determine who had possession of the mobile home and that since he acted as an employee of Harris, he never enjoyed dominion and control of the mobile home.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517.
|4The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Casey, 1999-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). The reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
Louisiana R.S. 30:2531.3 is the crime of commercial littering and states, in pertinent part:
A. No person shall dispose or permit the disposal of litter resulting from industrial, commercial, mining, or agricultural operations in which the person has a financial interest upon any public place in the state, ... whether from a vehicle or otherwise, including but not limited to any public highway, ...
B. No person shall operate any truck or other vehicle on any highway in such a manner or condition that litter resulting from industrial, commercial, mining, or agricultural operations in which the person is involved can blow or fall out of such vehicle or that mud from its tires can fall upon the roadway.
Louisiana R.S. 30:2531.3(C)(1) creates several presumptions depending upon the circumstances surrounding the act of littering and states:
If the litter is disposed of from a motor vehicle, boat, or conveyance, except a bus or large passenger vehicle or a school bus, all as defined by R.S. 32:1, there shall be an inference that the driver of the conveyance disposed of the litter. If such litter was possessed by a specific person immediately before the act of disposing, there shall be a permissive rebuttable presumption that the possessor committed the act of disposing.
Constructive possession occurs when an object is subject to the defendant’s dominion and control. A defendant’s dominion and control over an object constitutes constructive possession even if it is only temporary and even if the control is shared. State v. Bailey, 511 So.2d 1248 (La.App.2d Cir.08/19/87). Constructive possession entails an element of awareness or knowledge that the object is there and the general intent to possess it. State v. Chatman, 43,184 (La.App.2d Cir.04/30/08), 981 So.2d 260.
Here, the State produced sufficient evidence to prove all the elements of commercial littering in order to convict Gibbs. The record indicates that Gibbs was paid to move the mobile home, the mobile home was attached to a truck driven by Gibbs, and Gibbs abandoned the mobile home along Highway 1 by detaching it from his truck and leaving it along the side of the road. The statute is not ambiguous and *397 the record clearly shows that the State has proven all the elements of the crime.
Gibbs’ argument that Harris had taken possession of the 70-foot mobile home before it was discarded extends the legal fiction of constructive possession beyond its breaking point. Gibbs had vast experience moving mobile homes as he had done so for over 20 years. Harris relied upon Gibbs’ knowledge and experience in order to safely relocate his family home to Caddo Parish. Ultimately, Gibbs betrayed that trust by abandoning the 70-foot mobile home along the highway and demanding its repair even though he knew repair to be impossible. Given that Harris had no other recourse, it can hardly be said that by uttering the word “ok” in response to Gibbs’ refusal to move the mobile home further, Harris intended to take possession of the mobile home along Highway 1. The evidence produced at trial clearly indicated that Harris intended to take possession of the mobile home in Caddo Parish where he paid Gibbs to | fimove it. Furthermore, any assertion that the mobile home was subject to Harris’s physical control and dominion is patently false given that Harris lacked the experience or resources to affect the movement of the mobile home in any way. Allowing Gibbs to exculpate himself from criminal liability simply by gaining the owner’s presence and informing the owner that he is now in possession of the mobile home, poses a dangerous precedent by turning an act of littering into a coercive transfer of possession.
Gibbs’ alternative contention, that Harris’s ownership of the mobile home denied Gibbs the ability to possess it, is equally misguided and confuses the concept of property law detention (i.e. the exercise of actual control over a thing without any pretension of ownership) with the concept of criminal law possession. Under the Louisiana doctrine of detention, Harris would indeed be the possessor of the mobile home in that he held and exercised his right to exclusive enjoyment of the property whereas Gibbs only exercised physical control over the property at the behest of Harris. However, criminal law does not draw such distinctions and requires only dominion and control with a general intent to possess. As stated above, the evidence adduced at trial proves that Harris did not have possession of the mobile home when it was disposed of by Gibbs.

Error Patent

Our review of the record indicates an error patent. The Gibbs was charged with violating La. R.S. 30:2531, which is entitled, “Intentional littering prohibited; criminal penalties; simple littering prohibited; civil |7penalties; special court costs.” Despite this charge, several times during the trial and in the appellate brief reference is made by both parties to the “commercial littering” statute, which is La. R.S. 30:2531.3. The investigating deputy stated that he issued Gibbs a summons for commercial littering, and a copy of the summons was included in the record which verifies this statement. In fact, reference is made to commercial littering several times in the record; however, the bill of information charges Gibbs with violating the intentional littering statute, and he was found guilty “as charged.” No complaint was made about this discrepancy. In State v. Lewis, 46,344 (La.App.2d Cir.05/18/11), 69 So.3d 604, this Court found that even when the bill of information supplies the wrong section number or statute, the conviction is upheld if the Defendant was given fair notice and identity of the offense and does not claim surprise or prejudice. Such was the case here. Therefore, the statute to be applied in this case is that pertaining to commercial littering.
*398 CONCLUSION
For the foregoing reasons, the conviction and sentence of Daniel Lee Gibbs are affirmed. Costs of this appeal are assessed to Gibbs.
AFFIRMED.
GASKINS, J., dissents with reasons.